1  PAUL B. ALBRITTON, State Bar No. 104172
   MELANIE SENGUPTA, State Bar No. 244615
2  MACKENZIE & ALBRITTON LLP
   155 Sansome Street, Suite 620
3  San Francisco, CA 94104
4  Telephone: (415) 288-4000
   Facsimile: (415) 288-4010
5  Emails: pa@mallp.com
          m.sengupta@mallp.com
6
7  Attorneys for Plaintiff SACRAMENTO-
   VALLEY LIMITED PARTNERSHIP, d/b/a
8  VERIZON WIRELESS

9

10 UNITED STATES DISTRICT COURT

11 EASTERN DISTRICT OF CALIFORNIA

12 SACRAMENTO DIVISION

13

| | |
|---|---|
| SACRAMENTO VALLEY LIMITED PARTNERSHIP, a California Limited Partnership d/b/a VERIZON WIRELESS, | Case No. |
| | **COMPLAINT** |
| Plaintiff, | Date:<br>Time:<br>Courtroom:<br>Judge: |
| vs. | |
| NEVADA COUNTY, CALIFORNIA, | |
| Defendants. | |

1
COMPLAINT – CASE NO.

Plaintiff Sacramento Valley Limited Partnership doing business as Verizon Wireless complains against Defendant Nevada County, California (the "County") and alleges as follows:

### NATURE OF THE ACTION

1. This action is brought under Section 704 of the federal Telecommunications Act of 1996 (the "TCA"), codified as 47 U.S.C. Section 332(c)(7). The action arises from the County's unlawful denial of an application by Verizon Wireless to construct a personal wireless service facility at 20896 Dog Bar Road, Grass Valley, California in the unincorporated area of the County (the "Application"). The wireless facility would allow Verizon Wireless to make badly needed service improvements in the area.

2. Modern wireless communication requires networks of antennas and supporting radio equipment to provide reliable service throughout a geographic area. Congress imposed certain limitations on the traditional zoning authority of state and local governments to regulate the location, construction, and modification of such facilities, referred to as "personal wireless service facilities," in the TCA. *City of Arlington v. Federal Communications Commission*, 569 U.S. 290 (2013).

3. In this case, the County has violated three of those limitations. First, the County's denial was not based on substantial evidence, in violation of 47 U.S.C. Section 332(c)(7)(B)(iii). Next, the County's denial effectively prohibited Verizon Wireless from providing personal wireless services, in violation of 47 U.S.C. Section 332(c)(7)(B)(i)(II). Finally, the County based its decision based on fear of radiofrequency ("RF") emissions, in violation of 47 U.S.C. Section 332(c)(7)(B)(iv).

4. The Court should order the County to promptly issue the permit and other approvals sought in the Application to remedy the County's violation of the TCA. Verizon Wireless also seeks a declaration that the County's denial violated the TCA and an injunction precluding the County from refusing to issue all relevant and necessary permits for the wireless telecommunication facility sought in the Application.

5. Verizon Wireless also respectfully requests expedited judicial review of these claims as required by Section 332(c)(7)(B)(v) of the TCA, including an expedited schedule for briefing and argument of motions for summary judgment.

**PARTIES**

6. Plaintiff is a California limited partnership doing business as Verizon Wireless. It is the local affiliate of a nationwide provider of wireless telecommunications services. Verizon Wireless is a "communications common carrier" and a "telecommunications carrier" that provides "personal wireless services" and "interstate and intrastate telecommunications services," as those terms are defined and used in the TCA and in the rules, regulations, and orders promulgated by the Federal Communications Commission (the "FCC").

7. Verizon Wireless is licensed by the FCC to provide interstate and intrastate telecommunications services and personal wireless services via radio communication nationwide, including within the County. Verizon Wireless provides such services via radiofrequency spectrum that it is licensed to use by the FCC.

8. Defendant County of Nevada is the local government entity, duly constituted under the Constitution and laws of the State of California, with the responsibility and authority to review, and to take final action on, applications to install or modify personal wireless service facilities in the County of Nevada.

**JURISDICTION AND VENUE**

9. This case arises under the Constitution and laws of the United States, including the Supremacy Clause, U.S. Const. Article VI, Clause 2, and the TCA, 47 U.S.C. Sections 151, *et seq*.

10. This Court has subject-matter federal question jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1337. The Court has authority to grant declaratory relief pursuant to 28 U.S.C. Sections 2201 and 2202.

11. Venue is proper in this Court under 28 U.S.C. Section 1391(b), because the County is in this District, and the acts or omissions giving rise to this action occurred in this District.

12. A statutory cause of action to challenge a final action, or a failure to act, on an application for a permit for a wireless service facility is expressly provided for in 47 U.S.C.

Section 332(c)(7)(B)(v).  The statute also provides that "the court shall hear and decide such action on an expedited basis."  *Ibid*.

## INTRADISTRICT ASSIGNMENT

13. Assignment to the Sacramento Division of this Court is appropriate pursuant to Local Rule 120(d) in that a substantial part of the events or omissions which give rise to the claims asserted herein occurred in the County.

## FACTS COMMON TO ALL COUNTS

### The Application and the Project

14. Verizon Wireless provides telecommunications services, including personal wireless services, within the County, pursuant to licenses granted by the FCC.  To provide such services, Verizon Wireless must build, operate, maintain, and periodically modify a network of cell towers, antennas, and associated electronic equipment.

15. On November 8, 2023, Verizon Wireless filed its Application with the County requesting a use permit to build, operate, and maintain an unoccupied personal wireless service facility (the "Project").  The Project is a 129-foot tower facility camouflaged as a pine tree, on a hillside surrounded by foothill oak and pine woodlands.  The antennas will be concealed within faux foliage and branches, and branches will extend beyond and above the antennas, providing a realistic tapered crown.  The Project will look like a slightly taller tree amongst other trees of similar height.  The tree pole will be placed within a 900-square foot lease area, surrounded by a chain link fence fitted with earth-tone privacy slats and topped with barbed wire, totaling eight feet in height.  The equipment area will also contain network cabinets and a standby diesel generator to provide continued service during power outages and emergencies.

16. The Project site is a 14-acre property at 20896 Dog Bar Road, which is developed with a residence, barn, and various other accessory structures (the "Property").  The Property, zoned AG–General Agricultural, is surrounded by low-density development consisting of single-family residences and ranch/agricultural uses.  The Project will have no significant visual or other impact on any homes due in part to distance, as the nearest off-site residence is hundreds of feet from the Project.

17. Verizon Wireless submitted photo-simulations of the Project from several off-site vantage points to document its insignificant visual impact. Verizon Wireless also submitted, among other supporting materials, an engineering analysis of the need for the Project, and a report from an independent engineering firm that confirmed the Project would comply with the FCC's safety limits on radiofrequency exposure.

18. Verizon Wireless needs to install the Project to address a coverage and capacity gap in western Nevada County around Dog Bar Road near Feather Way, as well as to establish a dominant signal. The Project will also densify Verizon Wireless's network in the area and improve existing service capabilities.

19. The Application constituted a "request for authorization to place, construct or modify personal wireless service facilities" within the meaning of 47 U.S.C. Section 332(c)(7)(B).

**The County's Review and Unlawful Denial of the Application**

20. The County's planning staff reviewed the Application, including the photosimulations, third-party report regarding radio frequency emissions, and engineers' statements.

21. Before the Zoning Administrator held a public hearing on the Application, planning staff prepared a detailed report, analyzing the Project's compliance with the requirements for approval under the Code and other applicable law. The staff report concluded that the Project met all applicable requirements, including proof that the Project will fill a significant coverage and capacity gap and will comply with FCC limits on RF emissions, and the County's noise limits, height limits, and design standards to minimize visual impacts.

22. With respect to visual impacts, planning staff concluded that the "foothill oak-pine woodlands provide a varying skyline and screening, which limits public views" and that the "top of the monopine may rise above the surrounding canopy, but the monopine will look like a pine tree and will be hard to distinguish from the other trees." Planning staff recommended that the Zoning Administrator approve the Application.

23. The Zoning Administrator reviewed the Application at a public hearing on June 12, 2024. Planning staff, Verizon Wireless, and several members of the public opposed to the

Application spoke at the hearing. Verizon Wireless explained that the Project is well within the FCC's radiofrequency exposure standards and responded to questions about access and utilities.

24. Project opponents raised concerns about the potential environmental effects of radiofrequency emissions. Regulation of radiofrequency emissions is expressly preempted by the TCA, and so long as the Project demonstrates that it will not exceed the FCC's exposure thresholds, fear of radiofrequency emissions cannot lawfully form the basis for denying the Application. 47 U.S.C. Section 332(c)(7)(B)(iv). Opponents also complained about aesthetics, noise, property values (largely, if not entirely, a proxy for their concern about RF emissions), and fire danger.

25. The Zoning Administrator approved the Application, after confirming compliance with County noise standards and explaining that just because a site is visible, does not mean it has a significant impact. The Zoning Administrator also explained that the Project complies with the FCC's exposure standards and stated that protection of property values is not a ground for denial in the County Code. The Zoning Administrator found, among other things, that the Project is consistent with the General Plan goals, objectives and policies, and with the Rural General Plan land use map designation and meets all applicable provisions of the Land Use and Development Code or a same practical effect of those provisions.

26. On June 24, 2024, a couple residing at a property near the Project (the "Appellant") appealed the Zoning Administrator's approval (the "Appeal"), claiming that the Application did not comply with the County's Land Use and Development Code and that it would have "severe aesthetic impacts" upon their home and result in loss in property value. Their residence is approximately 1,200 feet away from the Project.

27. In a letter dated July 5, 2024, to the Board of Supervisors, Verizon Wireless refuted the Appeal, providing photosimulations; a radiofrequency compliance report prepared by a third-party engineer, confirming that radiofrequency exposure anywhere at ground level will be no more than 0.4 percent of the FCC's general population exposure limit; coverage maps confirming a significant gap in Verizon Wireless service coverage and capacity in western Nevada County

1  around Dog Bar Road near Feather Way; and a detailed alternatives analysis confirming that the
2  Project is the least intrusive, technically feasible means to fill the gap.

3      28.    Planning staff responded to the Appeal in its staff report to the Board of
4  Supervisors, addressing each of the seven issues they raised.  Staff concluded that "all of the
5  issues raised in the appeal have been considered and were adequately addressed by project
6  conditions of approval and mitigation measures" and that the Project "meets all the requirements
7  to obtain a Conditional Use Permit and is consistent with the County's Zoning Ordinance
8  governing communication towers."  Planning staff recommended denying the Appeal and
9  upholding the Zoning Administrator's approval.

10      29.    On July 9, 2024, the Board of Supervisors held the first of two hearings on the
11  Application.  The Board heard presentations from the Planning staff, Verizon Wireless, the
12  Appellant, and other members of the public, both in support of and opposition to the Application.

13      30.    Verizon Wireless's representatives presented substantial evidence at the hearing on:
14  (a) the alternative sites that were considered but rejected as infeasible, (b) the demonstrated
15  significant gap in service coverage and capacity in the area, (c) how the well-designed faux tree
16  concealed the antennas from views and visually integrated into the surrounding hillside, and (d)
17  compliance with the FCC's standards for RF emissions.

18      31.    The Appellant complained that the screened and visually integrated Project was
19  somehow aesthetically undesirable and maintained that their service was fine.  Other opponents
20  voiced their concerns about the alleged aesthetic impacts of the visually integrated Project, fear of
21  RF exposure, especially to children, their claimed lack of need for the Project despite no expert
22  opinion to support their position, and alleged fire risks of the Project.  Many of the residents cited
23  fears of the alleged dangers of the Project's RF emissions.

24      32.    The Board expressed sympathy for the neighbors, focusing on the need for the
25  Project and residents' fear of the perceived health effect of RF emissions.  To find a compromise,
26  the supervisors requested additional photosimulations and information regarding the gap in
27  service.  Verizon Wireless agreed to toll the FCC shot clock, which requires a municipality to
28

1  render a decision on a wireless application within a fixed time, to allow for a continuance of the
2  hearing.

3  33.  After the July 9, 2024, hearing, Verizon Wireless hired independent consultants Previsualists, Inc., to prepare new photosimulations using advanced drone technology to document the height of the Project. Previsualists visited the site and coordinated with the neighbors to take photographs from nearby vantage points, including the three nearby properties. The photosimulations demonstrate that the Project will blend with the surrounding forested hillside. Verizon Wireless also submitted a detailed engineering report to further explain the significant gap in the area. The report was supported by an additional drive test, propagation maps, and key performance indicator metrics related to the performance of the existing network. Verizon Wireless also provided additional information regarding an alternative site.

34.  Subsequently, Verizon Wireless determined that it was able to move the Project 20 feet north to further minimize any aesthetic impacts. Previsualists again prepared photosimulations via drones for the new site.

35.  Planning staff prepared another report, again supporting Verizon Wireless's conclusions that there is a significant gap and that there are no other technically feasible alternative sites. They also concluded that "[a]lthough the communication facility is not completely invisible from 20962 Dog Bar, steps have been taken to minimize the visibility and the monopine tower is adequately camouflaged to a level that is effectively unnoticeable." Planning staff yet again concluded that the Project "meets all the requirements to obtain a Conditional Use Permit and is consistent with the County's Zoning Ordinance governing communication towers," and recommended denial of the Appeal.

36.  On August 20, 2024, the Board held its second hearing on the Application, receiving presentations from staff, Appellant, and Verizon Wireless.

37.  Appellant took issue with Verizon Wireless's drive test and propagation maps demonstrating a significant gap, despite their lack of a qualified expert. They again complained of fire risk associated with the Project spontaneously combusting or toppling over, as well as RF

emissions.  Other commenters complained about RF emissions, a decrease in property values due to RF emissions, and aesthetics.

38. Verizon Wireless demonstrated the minimal aesthetic impact on the community through the new photosimulations.  Verizon Wireless representatives again explained that the Project is necessary to address a gap in coverage, as well as to offload demand from existing facilities elsewhere in the area that have exhausted their capacity.  They also explained that Verizon Wireless had sought the least intrusive location, looking first for existing wireless facilities on which to collocate, and then for the least intrusive locations.  It explained the constraints on the County imposed by federal law.

39. The Board discussed various aspects of the Project, including speculative future height increases, an alleged conflict between with Verizon Wireless's propagation maps and marketing maps, alternative sites and collocations, feared diminished property values due to the Project, speculative concerns about fire danger associated with the Project, and the aesthetic impacts to the neighbors.

40. Prior to making a motion to approve the appeal, Supervisor Scofield commented that he visited the Project site and what stood out to him was "that young children were out playing in that area" and it "disturbed [him] enough to say really made me think that that in itself was enough for me to say I don't like this project."  He acknowledged "that's the health part of it and we're not supposed to be dealing with the health part of it" but he "wouldn't want to live next to [the Project]".  After taking a short break, Supervisor Scofield amended his motion to a resolution to uphold the Appeal, overturning the Zoning Administrator approval.  The Board denied the Application at the August 20, 2024, hearing (the "Denial").

41. The Board neither acknowledged nor attempted to reconcile the conflict between its decision and the conclusions of its own planning staff and Zoning Administrator.

42. The Board also heard, but disregarded, the substantial evidence presented by Verizon Wireless's representatives at the hearing about: (a) the alternative sites that were considered but rejected as infeasible for various reasons, (b) the demonstrated significant gap in service coverage and capacity in the area, (c) how the well-designed faux tree concealed the

antennas from views and visually integrated into the surrounding hillside, and (d) compliance with the FCC's standards for RF emissions.

43. The Application and the Project comply fully with all lawful zoning, design and other requirements imposed by the County. Accordingly, the County should have approved the Application because there were no valid or lawful grounds for denial.

**Grounds for Declaratory Relief**

44. A present, actual controversy has arisen and now exists between Verizon Wireless and the County regarding their respective legal rights and duties. Verizon Wireless contends that the County's acts and omissions have violated the TCA. On information and belief, the County denies these allegations.

45. Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of Verizon Wireless's rights and the County's duties and authority.

**Grounds for Injunctive Relief**

46. As a result of the County's actions and resulting violations of the TCA, described herein, Verizon Wireless has been, and will continue to be, damaged and irreparably harmed absent the relief requested in this Complaint. The harm caused by the County's unlawful actions includes, but is not limited to, impairment of Verizon Wireless's: (a) ability to make necessary improvements to and enhancements of its wireless communications network; (b) ability to provide its customers in the County with the high-quality, reliable service they need and rightfully expect; (c) ability to compete with other providers of telecommunications services; (d) ability to make full use of its existing licenses and business investments; and (e) good will and business reputation.

47. The harm that Verizon Wireless has suffered and is continuing to suffer from the County's actions is not reasonably susceptible to accurate calculation and cannot be fully and adequately addressed through an award of damages.

48. Moreover, the public interest in the improvement and advancement of wireless networks and wireless service facilities has been irreparably harmed and will continue to be irreparably harmed by the County's unlawful actions. Verizon Wireless's present and future

customers, as well as the public at large, are significantly prejudiced by the County's unlawful conduct.

49. Wireless service facilities are an important component of emergency response systems and provide a vital alternative to traditional landlines during fires, earthquakes, and other natural disasters, for both the public and emergency responders. The Project is necessary for Verizon Wireless to provide reliable service in the County. The County's Denial is causing irreparable harm to the public interest in reliable emergency communications and threatens public safety.

50. In contrast to the immediate and irreparable injury being suffered by Verizon Wireless, its customers, and the public interest, the County will suffer no injury if the Court issues the requested injunction and other relief requested herein.

**FIRST CLAIM FOR RELIEF**
**(Violation of 47 U.S.C. Section 332(c)(7)(B)(iii))**
**(Denial Not Based on Substantial Evidence)**

51. Verizon Wireless incorporates by reference each of the allegations contained in each of the preceding paragraphs as if fully set forth herein.

52. "In order to determine whether a locality's denial was supported by substantial evidence, as Congress directed, courts must be able to identify the reason or reasons why the locality denied the application." *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 300 (2015).

53. The County's stated reasons for denying the Application were not based on substantial evidence. Therefore, the Denial was not based on substantial evidence in violation of 47 U.S.C. Section 332(c)(7)(B)(iii).

54. Accordingly, Verizon Wireless prays for relief as set forth below.

**SECOND CLAIM FOR RELIEF**
**(Violation of 47 U.S.C. Section 332(c)(7)(B)(i)(II))**
**(Unlawful Prohibition of Service and Bar to Entry)**

55. Verizon Wireless incorporates by reference each of the allegations contained in each of the preceding paragraphs as if fully set forth herein.

56. The FCC established a "materially inhibits" test to determine whether a jurisdiction has unlawfully prohibited service. *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd. 9088 (2018) ("2018 Declaratory Ruling"), vacated in part on other grounds by *City of Portland v. United States*, 969 F.3d 2020 (9th Cir. 2020). Pursuant to this test, "an effective prohibition occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service" and is met "not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities." *Id.* at 9104-9105. Therefore, "an effective prohibition includes materially inhibiting additional services or improving existing services." *Id*. The Ninth Circuit upheld the relevant portions of the FCC Order on review in the *City of Portland* appeal.

57. The County's denial here materially inhibits Verizon Wireless' provision of service under this test. Verizon Wireless demonstrated that the Project would introduce new services, improve service capabilities, and densify the network by providing new low-band outdoor coverage to 21.7 square miles and new mid-band outdoor coverage to 3.6 square miles.

58. The Project will also introduce new services, improve service capabilities and densify the network by offloading three existing wireless facilities that have reached capacity exhaustion. Verizon Wireless also demonstrated that the Project is the best, and indeed only, option available to provide these services.

59. Prior to the FCC Order, the Ninth Circuit had used a different, and arguably stricter, test for when municipalities had "effectively prohibited" service in violation of the TCA. This test required a carrier to show that its facility is the least intrusive means to fill a significant gap in service. *See T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 999 (9th Cir. 2009). Although the Ninth Circuit's approval of the FCC Order has therefore rendered this test to be moot, even if it were relevant, Verizon Wireless would satisfy that test as well. Verizon Wireless provided evidence to demonstrate that it has a significant gap in service coverage and capacity in the area to be served by the Project, and the Denial prevents Verizon Wireless from filling that gap by the least intrusive means.

60. Verizon Wireless provided data to support a significant gap in service, including low-band outdoor coverage gap of 1.4 square miles and mid-band outdoor coverage of one square mile. It will also provide a new dominant signal and offload three existing facilities that have exceeded their capacity.

61. It also demonstrated that the Project is the least intrusive means by analyzing other potential alternatives in the area and comparing them to the Project. The other alternatives were more intrusive. Furthermore, the County failed to raise and disclose another available, technologically feasible, and less intrusive alternative to the Project.

62. The County's Denial of the Application prohibited and/or had the effect of prohibiting Verizon Wireless from providing personal wireless services in violation of 47 U.S.C. Section 332(c)(7)(B)(i)(II).

63. Accordingly, Verizon Wireless prays for relief as set forth below.

**THIRD CLAIM FOR RELIEF**
**(Violation of 47 U.S.C. Section 332(c)(7)(B)(iv))**
**(Denial Impermissibly Based on Fear of RF Emissions)**

64. Verizon Wireless incorporates by reference each of the allegations contained in each of the preceding paragraphs as if fully set forth herein.

65. The TCA provides in part that local governments may not regulate wireless facilities "on the basis of the environmental effects of radio frequency emissions." 47 U.S.C. Section 332(c)(7)(B)(iv).

66. The TCA preempts not just denials based explicitly on RF concerns, but it also prohibits reliance on any proxy such as property values. *See, e.g., Calif. RSA No. 4 v. Madera County*, 332 F. Supp. 2d 1291, 1311 (C.D. Cal. 2003) ("The complaints about property values were really a proxy for concerns about possible environmental effects of RF emissions, which cannot provide the basis to support a decision concerning the placement or construction of a facility"); *AT&T Wireless Services of Cal. LLC v. City of Carlsbad*, 308 F. Supp. 2d 1148, 1159 (S.D. Cal. 2003) (in light of federal preemption, "direct or indirect concerns over the health effects of RF emissions may not serve as substantial evidence to support the denial of an application").

67. Verizon Wireless submitted an unrebutted report prepared by a third-party engineering firm, with expertise in determining compliance with the FCC regulations governing RF emissions, that the Project will operate well below the limits on RF emissions set forth in the FCC regulations.

68. While the Denial claims that the Board "is not basing its decision in any way on the Appellant's evidence concerning radio frequency emissions," it also states that "Appellants submitted evidence and testimony concerning the negative health effects of radio frequency emissions." The Board cited feared RF-related health effects just prior to making a motion for the Denial.

69. Accordingly, Verizon Wireless prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Verizon Wireless prays for Judgment as follows:

1. For an Order and Judgment finding and declaring that the County's denial of the Application was not based on substantial evidence, in violation of 47 U.S.C. Section 332(c)(7)(B)(iii);

2. For an Order and Judgment finding and declaring that the County's denial prohibited and/or had the effect of prohibiting Verizon Wireless from providing personal wireless services in violation of 47 U.S.C. Section 332(c)(7)(B)(i)(II);

3. For an Order and Judgment finding and declaring that the County impermissibly denied the Application based on RF emissions or concerns about the purported health effects of those RF emissions, so long as those emissions are below the limits set by the FCC in violation of 47 U.S.C. Section 332(c)(7)(B)(iv);

4. For an Order and Judgment requiring the County to set aside, vacate and rescind the Denial;

5. For an Order and Judgment directing the County to issue forthwith all permits and other approvals required to allow Verizon Wireless to proceed with the Project as proposed in the Application;

6. For an Order and Judgment precluding and enjoining the County from refusing to grant approval of the Application and all other permits and authorizations necessary for the construction and operation of the Project;

7. For expedited review of the matters set forth in this Complaint;

8. For an order awarding Verizon Wireless the costs and disbursements incurred in connection with this action pursuant to 28 U.S.C. Section 1920; and

9. For an order granting such other, further, or different relief as this Court deems just and proper.

Dated: July 10, 2025

MACKENZIE & ALBRITTON LLP

/s/ Melanie Sengupta
MELANIE SENGUPTA
Attorneys for Plaintiff
SACRAMENTO VALLEY LIMITED
PARTNERSHIP, d/b/a VERIZON WIRELESS