Ariel Strauss (Bar # 282230)
Law Offices of Ariel Strauss
92 Pine Hill Drive
El Sobrante, California 94803
Phone: 310-709-1213
Email: ariel@alegal.info

Andrew J. Campanelli (*pro hac vice*)
CAMPANELLI & ASSOCIATES, P.C.
1757 Merrick Avenue, Suite 204
Merrick, New York 11566
Telephone: (516) 746-1600
Email: ajc@campanellipc.com

*Attorneys for Putative Intervenors*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| SACRAMENTO VALLEY LIMITED PARTNERSHIP, a California Limited Partnership d/b/a VERIZON WIRELESS,<br><br>Plaintiff,<br><br>- against -<br><br>NEVADA COUNTY, CALIFORNIA,<br><br>Defendant. | No. 25-CV-01932 (WBS) (SCR)<br><br>**MOTION TO INTERVENE<br>PURSUANT TO RULE 24** |

MOTION TO INTERVENE

# MOTION TO INTERVENE

Putative Intervenor Kristin Phalen (the "Movant"), by and through undersigned counsel, respectfully requests that the Court enter an order:

1) Pursuant to Fed.R.Civ.P. 24(a)(2) granting intervention as of right; or

2) in the alternative, Pursuant to Fed.R.Civ.P. 24(b)(1) granting permissive intervention; and

3) For such other and further relief as this Court deems just and proper.

This motion is supported by the following Memorandum of Points and Authorities.

# MEMORANDUM OF POINTS AND AUTHORITIES

The Movant seeks to intervene as a defendant in this action. In addition, the Movant seeks to assert counterclaims against the Plaintiff and cross-claims against the Defendant.

The Movant and her husband own and live on property abutting the site proposed for the new cell tower. Movant participated in the underlying action before the Nevada County Planning Department, and filed an appeal of the Planning Department's decision granting the application to the Board of Supervisors.

## I. The Movant Meets the Standard for Intervention as of Right

The Movant meets the standard for intervention as of right under Fed. R. Civ. P. 24(a)because she meets the four-part test set out by the Ninth Circuit: (1) the intervention application is timely;  (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties

may not adequately represent the applicant's interest."[1] These "requirements are broadly interpreted in favor of intervention."[2]

First, the motion is timely, as the Complaint was filed on July 10, 2025, and issue was joined on August 7, 2025. Given the early stage of the litigation, the parties would not suffer prejudice as a result of Intervention by the Movants, nor would intervention cause disruption or delay the proceedings. "These are traditional features of a timely motion."[3]

Second, the Movant has a significant protectable interest relating to the property or transaction that is the subject of this action. "[T]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[4] The Movant and her family live on land abutting the proposed site for the new cell tower.[5] Moreover, the Movant's home is in such close proximity to the proposed tower that the use and enjoyment of her property will be adversely impacted in that the tower would be dominant in the views from her kitchen, dining room, back porch and from visual perspectives all over her property. (*See* Exhibit J to Exhibit A, hereto.) Federal courts around the country have repeatedly held that adverse aesthetic impacts, like those that the Movant and her

---

[1] *Citizens for Balanced Use v. Montana Wilderness Ass'n,* 647 F.3d 893, 897 (9th Cir. 2011) (quotation omitted).

[2] *Id. See also Wash. State Bldg. & Constr. Trades Council v. Spellman,* 684 F.2d 627, 630 (9th Cir. 1982) ("Rule 24 traditionally has received a liberal construction in favor of applicants for intervention."), *cert. denied, Don't Waste Washington Legal Def. Fund v. Washington,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983).

[3] *Id.*

[4] *Wilderness Soc'y v. United States Forest Serv.,* 630 F.3d 1173, 1179 (9th Cir. 2011) (internal quotation marks and citations omitted).

[5] Memorandum in Support of Appeal, Point III (B) Exhibit J, attached hereto as Exhibit A.

family would experience if the tower is built, are proper grounds upon which a local municipality may deny an application for a new wireless telecommunications facility. As such, Movant has a significant protectable interest in protecting the aesthetic qualities of her home and neighborhood and the decision of the County that protects that interest. *See, e.g., New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, v. City of Walla Walla,* No. 4:23-cv-05162-SAB, DE 26 at pp. 6-7 (E.D. Wash. Mar. 7, 2024) (attached hereto as Exhibit B), granting intervention to property owners abutting proposed cell tower site and finding they had a protectable interest at stake in the litigation.

The Movant participated actively in the proceeding before the Planning Department, voicing strong opposition to the proposed tower. After the Planning Department granted Plaintiff's Application, the Movant and others appealed the decision to the Board of Supervisors, presenting a memorandum and exhibits in support of their appeal (*see* Exhibit A, hereto).

Specifically, the Movant challenged the Planning Department's reliance on Plaintiff's unsupported claims of a gap in service, provided screen shots of Verizon's own interactive coverage map on its website, and refuting that Plaintiff had proven that a denial of its application would constitute an effective prohibition or material inhibition of its wireless service. Having been persuaded by the Movant's submissions, the Board reversed the decision of the Planning Department and denied the Application, citing Plaintiff's failure to provide sufficient information upon which the Board could base a decision in favor of Plaintiff. The Movant has a significant interest in defending the result reached by the Board on her appeal.

The Ninth Circuit interprets Fed. R. Civ. P. 24(a)(2) "broadly in favor of proposed intervenors."[6] "In keeping with that policy, we have held that Rule 24(a)(2) does not require a specific legal or equitable interest and noted that the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process[.]"[7]

Third, the disposition of the action may, as a practical matter, impair or impede the Movant's ability to protect her interest. The Movant has a protectable interest in defending the result that she helped bring about in her successful appeal – a result that protects her home and her property rights. The Movant's ability to protect this interest could be impaired or impeded by an adverse ruling in this case.

Fourth, the existing parties may not adequately represent the Movant's interests.[8] "The burden of showing inadequacy of representation is minimal and satisfied if the [movant] can demonstrate that representation of its interests may be inadequate."[9] "The requirement of the Rule is satisfied if the [movant] shows that representation of his interest 'may be' inadequate; and the

---

[6] *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (internal quotation marks omitted).

[7] *Wilderness Soc'y, supra,* 630 F.3d at 1179 (internal quotations and citations omitted).

[8] *See, e.g., City of Walla Walla, supra,* at pp. 7-9.

[9] *Citizens for Balanced Use, supra,* 647 F.3d at 898 (internal quotations and citations omitted).

burden of making that showing should be treated as minimal."[10] The Movant easily meets that "minimal" burden.

In the appeal, the Movant presented legal argument to the Board in opposition to the proposed cell tower, along with additional arguments not adopted by the Board. However, this Court nonetheless may uphold the Board's decision on grounds not relied upon by the Board "if those grounds are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal."[11]

As in *Citizens for Balanced Use, supra,* the Court "cannot conclude that the [Board] will undoubtedly make all of Movants' arguments, nor can [it] be assured that the [Board] is capable of making and willing to make such arguments."[12] The Movant was the only active participant in the appeal to offer legal argument supporting a denial of the Plaintiff's application. She is prepared to provide support for, and defenses of, the Board's decision that may not be advanced by the County. Indeed, upon information and belief, the County has indicated that it does not intend to actively fight this action. This is consistent with the fact that the County has agreed, on multiple occasions, to toll the statute of limitations in order to allow Plaintiff to commence an action against the County well after the thirty-day time limit set forth in the TCA. The County waived an affirmative defense, and did so repeatedly. Moreover, the County entered into these agreements

---

[10] *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538, n.10, 92 S. Ct. 630, 636, 30 L. Ed. 2d 686 (1972). *See also, Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (9th Cir. 1983) ("[T]he requirement of inadequacy of representation is satisfied if the [movant] shows that representation of its interests 'may be' inadequate and that the burden of making this showing is minimal.")

[11] *Walton v. Powell*, 821 F.3d 1204, 12112 (10th Cir. 2016).

[12] *Citizens for Balanced Use, supra,* 647 F.3d at 901.

without the proper authorization, in violation of the Open Meetings Law. These actions by the County indicate a clear inability, or lack of intention, to represent the interests of the Movant.

Here, the Movant asserts that her home is in close proximity to the proposed tower that she will suffer significant adverse aesthetic impacts the are different from the injury that would affect the general public. Such injury is directly connected to the proposed placement of Plaintiff's tower in unreasonably close proximity to the Movant's home. Further, the injury will be prevented by a favorable decision on the Movant's proposed counterclaims and cross-claims.

These assertions satisfy the requirements for Article III standing because "an allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a "'substantial risk' that the harm will occur."" *Id*. (Citations omitted.) Lawsuits like this one more often than not end in a settlement that allows the plaintiff to construct the proposed tower, at the proposed location, with few or no conditions. Municipalities like Nevada County often seek to avoid the continued expense of litigation, and the inherent negative impact on their funds, and agree to approve the application that they had previously denied in order to do so. As set forth above, such a settlement would cause irreparable harm to the Movant based upon the close proximity of the proposed tower to her home. This should not be allowed to occur without the Movant's participation in this action.

Moreover, the Complaint challenges the evidence and claims made by the Movant at the public hearings in connection with the Application. Indeed, the Plaintiff misrepresents the Movant's own evidence and arguments in support of its request for injunctive relief. The Movant should be permitted to defend her evidence and arguments, since Plaintiff refers to such evidence and arguments in the Complaint, and the County is unlikely to defend same. Based upon the

foregoing, the Movant meets the criteria for Article III standing, and should be permitted to intervene.

### III.　STATEMENT OF FACTS

This action concerns the denial of a zoning application submitted by Plaintiff to install a one hundred-twenty-nine-foot (129') cell tower, within 100 feet of two of the nearest residences, right outside their front doors. (*see* Complaint, ¶ 15) and about 300 feet from the Movant's property. The Movant does not seek to prevent the construction of the proposed tower. Rather, she seeks to have it constructed at a reasonable distance from her home, where it would not adversely impact the aesthetics of her property.

Moreover, the proposed tower is not actually necessary for Plaintiff's claimed purpose. Specifically, Plaintiff claims that it needs the proposed facility to provide wireless services to the area and fill a purported gap in wireless service and capacity there.

Nevertheless, an interactive coverage map from a database owned, created and maintained by Plaintiff demonstrates that Plaintiff has *no significant gaps* in its wireless coverage at the proposed location. The Movant included a copy of the interactive coverage map in her submission to the County. (*See* Exhibit E to Exhibit A, attached hereto.)

When the Board held a public hearing on the appeal of the Planning Department's grant of Plaintiff's application, the Movant actively supported her appeal. She submitted, among other things, letters from nearby homeowners – including herself and her husband – attesting to the adverse impact the proposed tower would have on their homes.

After the close of the public hearing, and based upon substantial evidence which had been presented to it, the Board properly, and for valid legal reasons, rendered a determination denying Plaintiff's application for its failure to submit substantial evidence of a significant gap in coverage.

In other words, Plaintiff's submissions to the Board failed to demonstrate a need for their proposed tower. As such, Plaintiff failed to show that a denial of its Application would effectively prohibit, or materially inhibit, Plaintiff's ability to provide cellular service in the area.

Plaintiff thereafter commenced this action asserting, among other things, that a September 2018 declaratory ruling by the FCC (the "Small Cell Order"), which states that an "effective prohibition exists when a locality materially inhibits a provider's ability to engage in a variety of activities including filling in a coverage gap, adding capacity to a network, introducing new services, or otherwise improving service capabilities."[13] However, as discussed herein, Plaintiff did not demonstrate that it suffers from any gap in service or any capacity deficiency. Nor did Plaintiff demonstrate that the proposed tower would remedy any purported gap.

## IV.   ARGUMENT

### A.   THE MOVANT IS ENTITLED TO INTERVENE AS OF RIGHT

The Movant's application to intervene should properly be granted as a matter of right because Movant meets the criteria of Fed.R.Civ.P. 24(a)(2).

Federal Rule of Civil Procedure 24(a)(2) explicitly provides:

> On a timely motion, the court *must* permit anyone to intervene who[…] claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the Intervenors' ability to protect its interest, unless existing parties adequately represent that interest."
>
> Fed.R.Civ.P. 24(a)(2) [Emphasis added]

---

[13] Complaint for Declaratory and Injunctive Relief and Expedited Review Pursuant to 47 U.S.C. § 332(c)(7)(B)(v) (the "Complaint"), at paragraph 41.

To establish entitlement to intervene as a matter of right, a putative intervenor must: (1) file a timely motion to intervene; (2) claim an interest relating to the property or transaction that is the subject of the action, (3) be so situated that without intervention the disposition of the action may impair that interest and (4) show that their interest is not already adequately represented by existing parties. *Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 897 (9th Cir. 2011).

Here, as will be more fully discussed in the following sections, the Movant meets all the criteria. Moreover, Courts construe Rule 24(a) "broadly in favor of Intervenors," based on "practical and equitable considerations." *United States v. City of Los Angeles,* 288 F.3d 391, 397-98 (9th Cir. 2002).

    i.    <u>The Application to Intervene is Timely</u>

Timeliness turns on three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *W. Watersheds Project v. Haaland,* 22 F.4th 828, 836 (9th Cir. 2022). A motion made "at an early stage of the proceedings" will neither prejudice other parties nor delay the proceeding. *Citizens for Balanced Use,* 647 F.3d at 897; *see also, Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1397 (9th Cir. 1995) (holding motion timely when filed four months after complaint and two months after answer and administrative record, but "before any hearings or rulings on substantive matters").

The Movant's motion to intervene is timely because 1) the litigation is still in its beginning stages, as issue has recently been joined, and 2) there would be no prejudice to the existing parties, since the Movant filed expeditiously after the Plaintiff sued, and the Court has conducted no proceedings or issued any substantive orders or rulings. At this early stage in the proceedings, no

prejudice to the other parties would result from the Court granting intervention. Since there was no delay in bringing this motion, it is unnecessary to address the reasons for any delay.

Although, there would be no prejudice to the existing parties based upon any claim of delay, the Movant would be severely prejudiced if her application is denied. Under the "totality of the circumstances," it is respectfully submitted that the Movant's application is timely, within the meaning of Fed.R.Civ.P. 24(a)(2).

      ii.      <u>The Movant Has an Interest in the Subject Matter of this Action</u>

The Movant satisfies the second element for intervention as of right because she has "significantly protectable" legal interests in the subject matter of this case. *The Wilderness Soc'y v. U.S. Forest Serv.,* 630 F.3d at 1177-78. This test "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *City of Los Angeles,* 288 F.3d at 398 (quoting *County of Fresno v. Andrus,* 622 F.2d 436, 438 (9th Cir. 1980)). "[T]he operative inquiry should be whether the 'interest is protectable under some law,' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" *The Wilderness Soc'y,* 630 F.3d at 1180 (quoting *Sierra Club v. EPA,* 995 F.2d 1478, 1484 (9th Cir. 1993)). Here, the Movant seeks to protect her interest by asserting claims for nuisance, among other things. (*See* Proposed Answer with Counterclaims and Cross-Claims, attached hereto as Exhibit C.) "Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and no specific legal or equitable interest need be established." *Citizens for Balanced Use,* 647 F.3d at 897 (cleaned up).

Rule 24(a) requires that an applicant for intervention possess an interest relating to the property or transaction that is the subject of the litigation. "While the type of interest sufficient to

sustain intervention as of right is not amenable to precise definition, a putative intervenor must show at a bare minimum that it has a 'significantly protectable' […] interest that is 'direct, not contingent.'" *Pub. Serv. Co. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998). "Potential economic harm to a would-be intervenor is a factor that warrants serious consideration in the interest inquiry." *Id.* The potential for economic harm is obvious, as set forth above.

Moreover, Verizon will likely argue that the Movant does not have an interest "relating to the property or transaction" at issue. This is not so. Federal courts have long recognized that in lawsuits contesting the application of zoning restrictions to a particular parcel of land, owners of adjoining parcels are entitled to intervene under Rule 24 (a)(2). *Wolpe v. Poretsky*, 144 F.2d 505 (D.C. Cir. 1944). Here, the proposed tower will dominate the views from all over the Movant's property, both indoors and out. Consequently, the proposed tower will interfere with the Movant's right to quiet use and enjoyment of her property by causing severe adverse aesthetic impacts. In addition, such adverse aesthetic impacts will likely cause the Movant's property to lose market value. (Exhibit J to Exhibit A.)

In her Proposed Answer (Exhibit C), the Movant sets forth counterclaims against Plaintiff (Anticipated Private Nuisance, Declaratory Judgment and Injunctive relief) as well as cross-claims against Defendant (Anticipated Private Nuisance, Declaratory Judgment and injunctive relief).

There can be no doubt that the Movant has a significant, protectable interest in the subject matter of this action.

    iii.    <u>The Disposition of the Action Will Impede the Movant's Interests</u>

An applicant for intervention as of right must be "so situated that the disposition of the action *may* as a practical matter impair or impede the applicant's ability to protect that interest." Fed.R.Civ.P. 24(a) (emphasis added). "Except in the instances in which there is an unconditional

statutory right to intervene, intervention of right shall be limited to the cases in which the disposition of the action impairs, as a practical matter, the intervenor's interest and ability to protect it." *United States v. Puerto Rico*, 227 F.R.D. 28, 29 (D.P.R. 2005).

A proposed intervenor who "would be substantially affected in a practical sense by the determination made in an action ... should, as a general rule, be entitled to intervene." *Sw. Ctr. for Bio. Diversity v. Berg,* 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment). Indeed, "after determining that the applicant has a protectable interest, courts have 'little difficulty concluding' that the disposition of the case may affect such interest." *Murphy Company v. Trump,* 2017 WL 979097, at *3 (D. Oregon 2017) (quoting *Cal. ex rel. Lockyer v. United States,* 450 F.3d 436, 442 (9th Cir. 2006)).

In this case, the disposition of the action without intervention will severely impede the Movant's ability to protect her property interests in her residential home. Indeed, without intervention, the existing parties will be debating the future of Movant's use and enjoyment of her property, without any input from the Movant. As detailed above, if Plaintiff is permitted to install its proposed tower in such close proximity to the Movant's home, the Movant's property will suffer very real and substantial adverse aesthetic and economic impacts.

As discussed more fully in Sub-Section "iv" below, the County's interest does not extend to protecting the individual interests of the Movant outside of its general obligation to the County's residents as a whole. Therefore, absent intervention, the Movant stands to suffer financial losses and other harms to her property rights, without having been afforded an opportunity to protect them.

Given the very real and substantial harm Movant stands to suffer, it is critical that she be permitted to participate herein, to ensure that any resolution of this case by judgment, order,

settlement or otherwise, takes her interests into consideration. Without intervention, the Movant's ability to protect her individual interests in protecting her quality of life and the marketability of her home will be impaired and impeded. As such, intervention should be granted pursuant to Rule 24(a).

      iv.    <u>None of the Existing Parties Can Adequately Represent the Movant's Interests</u>

As set forth in the attached Proposed Answer, the Movant's interests are at odds with both the Plaintiff and the County. The conflict between the Plaintiff and the Movant's interests is obvious.

Courts apply three factors to determine whether existing parties adequately represent a proposed intervenor's interests: (1) whether a present party will "undoubtedly" make all of a proposed intervenor's arguments; (2) whether a present party is "capable and willing" to make those arguments; and (3) "whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Sw. Ctr. for Bio. Diversity v. Berg,* 268 F.3d 810, 822 (9th Cir. 2001) (quoting *Nw. Forest Res. Council v. Glickman,* 82 F.3d 825, 838 (9th Cir. 1996)). "However, the burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties '*may* be' inadequate." *Id.* at 823 (quoting *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972)) (emphasis added).

Ultimately, "[t]he 'most important factor' in assessing the adequacy of representation is 'how the [Intervenors'] interest compares with the interests of existing parties.'" *Citizens for Balanced Use,* 647 F.3d at 898 (quoting *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003). Thus, while the Ninth Circuit presumes adequate representation "when the government is acting on behalf of a constituency that it represents," that presumption is overcome when the Intervenors have narrow, focused interests in specific policies relative to the government. *See id.* at 899 ("[T]he

13
MOTION TO INTERVENE

government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1256 (10th Cir., 2001)).

For example, in *Murphy, supra,* conservation groups overcame the presumption based on their "narrow interest not necessarily shared by the public as a whole – namely, to preserve the expanded area of the Cascade-Siskiyou National Monument for their members' aesthetic and recreational values." 2017 WL 979097, at *4. The government's "much broader interests" in defending an "entire regulatory scheme" meant there was "no guarantee" of adequate representation. *Id.* at *4-5. Other examples abound. The showing is even stronger when divergent interests have previously led to conflicting positions on relevant legal issues between the intervenors and government. *See, e.g., Idaho Farm Bureau,* 58 F.3d at 1398 (finding inadequate representation prong satisfied where intervenors' prior litigation led to challenged decision); *Alaska v. National Marine Fisheries,* 2023 WL 2789352, at *9 (D. Alaska 2023) (finding one of the Conservation Intervenors' history of "advocacy and litigation efforts" against government rebutted a presumption of adequate representation).

Here, the County has failed to raise at least one affirmative defense – the statute of limitations. Where a municipality denies an application for the installation of a wireless facility, the wireless company seeking to install it must commence an action within thirty (30) days of the denial. Here, upon information and belief, the County and the Defendant executed several tolling agreements that allowed Plaintiff to forestall bringing this action. However, the County Attorney lacked the authority to enter into such tolling agreements because the County did not follow the proper procedure for such authorization. Given the attempt to authorize the County Attorney to essentially waive an affirmative defense, the County demonstrates clearly that it will not represent

the interests of the Movant. As such, the Movant will assert the statute of limitations, and will argue that the County Attorney was not properly authorized to waive this affirmative defense.

Moreover, the record of the County's consideration of the Plaintiff's application, and the fact that the Movant had to appeal the County's grant of Plaintiff's application, demonstrates that the County and the Movant had conflicting positions on relevant legal issues. As such, the Movant is the only one capable of protecting her interests.

As a matter of law, the obligation of the County herein is to advocate for the County, *as a whole*. As such, the County could agree to resolve this case through settlement in which it would allow Plaintiff to install its proposed one hundred and twenty-nine-foot (129') cell tower within close proximity to the Movant's home, which will have severe, adverse consequences for the Movant.

The interests of the County and the Movant diverge in this scenario. The only way the Movant will have a meaningful opportunity to protect her legally protectable private rights in her property and home is to intervene herein and to advocate through her own counsel, who would advocate *only* for the private rights and interests of the Movant.

The County has shown little inclination to support the Movant herein. The County has a duty to all residents, and the interests of the County's residents, as a whole, will not be aligned with the interests of the Movant. The County may be inclined to settle the case to cut litigation costs and expenses for its residents and continue to ignore the detrimental impact the proposed tower would have on the Movant's aesthetic and economic wellbeing.

As such, it is clear that the Movant has met the "minimal burden" of establishing that representation by the County may be contrary to her own interests. Accordingly, the Court should grant this motion to intervene as of right.

B. **THE MOVANT SATISFIES THE STANDARD FOR PERMISSIVE INTERVENTION**

As detailed in Point I above, the Movant meets the requirements for intervention as of right under Rule 24(a). In the alternative, if this Court is disinclined to grant intervention as of right, the Movant requests that the Court grant leave to intervene by permission under Rule 24(b).

Fed. R. Civ. P. 24(b) provides, in relevant part: "Upon timely motion, the Court may permit anyone to intervene who . . . has claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

Permissive intervention is appropriate when (1) a movant's motion is "timely"; (2) the movant has a claim or defense that shares "a common question of law or fact" with the main action; and (3) intervention will not "unduly delay or prejudice" existing parties. Fed. R. Civ. P. 24(b); *see Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by The Wilderness Soc'y,* 630 F.3d 1173. In exercising its discretion under Rule 24(b), a court may also consider other factors, including "the nature and extent of the intervenors' interest," the "legal position they seek to advance," and whether they will "significantly contribute to ... the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977).

Here, the Movant meets the Rule 24(b) standard. She has a significant interest in preventing the installation of the proposed tower as such installation would cause severe, adverse aesthetic impacts and would severely reduce the value of her property. Consequently, the Movant has an interest in ensuring that this action is not settled or determined in favor of Plaintiff herein, or at least is not disposed of without her input.

Here, intervention will not cause any undue delay or prejudice to the existing parties, since the litigation is still in its beginning stages. Given the importance of the issues involved in this case and the stake that the Movant has in this litigation, it is respectfully submitted that the Court should permit intervention.

C. **THE MOVANTS WILL CONTRIBUTE TO A FULLER DEVELOPMENT OF THE ISSUES IN THIS ACTION**

Although the Movant shares the County's ultimate goal of upholding the denial of Plaintiff's application, the Movant here takes a different path to defending it than does the County, as the Movant is supremely concerned about adverse aesthetic and economic impacts, where the County expressly is not.

The Movant should be allowed to intervene in this case, whether by right or by permission. Without intervention, the Movant here will be without recourse to protect her property interests, given the fact that Defendant herein may be placed in a position where it would sacrifice those interests to serve what it would no doubt perceive is the greater good. Moreover, the disposition of this case would be assisted by the presence of the Movant, who raises important issues that would not be addressed by the existing parties. Accordingly, this Court should grant the motion to intervene.

### III.  CONCLUSION

For the reasons set forth above, the Movant respectfully requests that the Court grant intervention as of right, or in the alternative, permissive intervention. The Movant has attached as Exhibit C her proposed answer with Counterclaims and Cross-Claims.

Dated: October 2, 2025

                                Law Offices of Ariel Strauss

                                By:  /s/ Ariel Strauss (Bar # 282230)
                                        Ariel Strauss

                                CAMPANELLI & ASSOCIATES, P.C.

                                By:  /s/ Andrew J. Campanelli (*Pro Hac Vice*)
                                        Andrew J. Campanelli

                                *Attorneys for the Putative Intervenors*